1  Bernard Robert Goldsmith
2  1113 Kent Dr.
   530-908-3333
3  Defendant in Pro Se

4

5

6

7

8              **UNITED STATES DISTRICT COURT**
9              **DISTRICT OF MASSACHUSETTS**

10
   LUCAS CONNOR,                          Case No.: 4:24-cv-40127-MRG
11

12          Plaintiff,

13      vs.

14  BERNARD GOLDSMITH,                     **MOTION TO DISMISS UNDER**
                                           **RULE 12(B) AND 28 USC §1915(e)**
15

16          Defendant.

17

18

19

20

21

22

23

24

25

26

27

28                                 1

## TABLE OF CONTENTS

TABLE OF CONTENTS.............................................. 2
INTRODUCTION..................................................... 2
BACKGROUND.......................................................3
LEGAL STANDARD............................................... 8
THIS COURT LACKS SUBJECT MATTER
JURISDICTION...................................................... 8
    Plaintiff fails to show damages exceeding $75,000......... 9
    Plaintiff's communications show bad faith and
    conflicting calculations.............................................. 10
    Pleading attempts to aggregate claims against unnamed
    tortfeasors.............................................................. 16
    Plaintiff's demand for "corrections" and an "apology" is
    both worthless and impossible for Defendant to perform.. 17
THIS COURT LACKS PERSONAL JURISDICTION OVER
DEFENDANT........................................................ 19
    Pleadings do not assert any traditional bases of
    jurisdiction............................................................ 20
    Pleadings fail to establish any "minimum contacts" basis
    for personal jurisdiction........................................... 20
THIS ACTION HAS BEEN BROUGHT IN AN IMPROPER
VENUE................................................................ 21
PLAINTIFFS FAIL TO STATE A LEGALLY COGNIZABLE
CLAIM................................................................ 21
PLAINTIFF'S ACTION IS IS FRIVOLOUS AND
MALICIOUS......................................................... 23
CONCLUSION....................................................... 31

## INTRODUCTION

Defendant Bernard Robert Goldsmith, in this special pro se appearance, respectfully submits that this dispute does not belong in this Court for failure to state a claim and for failure to establish subject matter or personal jurisdiction, FRCP 12(b)(1-2), and FRCP 12(b)(3) for failure to state sufficient grounds to demonstrate that this is the proper venue for these proceedings.

2

MOTION TO DISMISS UNDER RULE 12(B) AND 28 USC §1915(e)

Plaintiff's forma pauperis action is also brought frivolously and maliciously, and so in the interest of justice should be dismissed by the court under t§he special forma pauparis rules of 28 USC §1915(e).

## BACKGROUND

Defendant makes humorous posts on the internet through the persona of an Arabian falcon trader and financier. Tens of thousands of people, unknown to Defendant except through internet pseudonyms, follow Defendant's feed of posts, reply with their own thoughts, and connect with each other.

In addition to his X account, Defendant maintains a YouTube account under the Falconry Finance brand, where he discusses basic questions of philosophy, phenomenology, eschatology, and the nature of human-ness. Defendant also maintains a Discord server, a live text chat nexus, with a community of over 2,000 people who all communicate with each other through channels, which are themselves dedicated to anodyne subjects such as "cooking," "music," "books," "falconry," and "politics."

Defendant's parodic "finance your falcon" advertisements, and strange, surreal descriptions of his fictitious bird trading enterprise attracted Plaintiff's attention in late 2021. Plaintiff eagerly engaged, as many people do, as a fan, and a participant in a game of pretend, where many seemingly unrelated people create humorous, momentary confusion by professing to be involved in a non-existent industry.

Plaintiff began identifying themselves to others on these platforms as head of Public Relations of UAE Exotic Falconry & Finance, LLC, and created customized business cards for their new imaginary role.

Over time, without Defendant's awareness, Plaintiff had developed a serious

3

MOTION TO DISMISS UNDER RULE 12(B) AND 28 USC §1915(e)

parasocial relationship with Defendant that happens to exist nowhere else but in Plaintiff's head.

In truth and fact, Plaintiff's publicly professed relationship with Defendant is of a protean nature, evolving over the years to suit Plaintiff's fugues and moments of whimsy.

Defendant professes he has never met Plaintiff.[1] Defendant, to his knowledge, has never been within 3,000 miles of Plaintiff. Defendant has directed no action towards Plaintiff's proposed jurisdiction of Massachusetts. Defendant has, since early 2022, made it unmistakably clear that he desires no contact whatsoever with Plaintiff.

Plaintiff's immediate action is properly contextualized as part of a larger pattern of harassment that has been going on since early 2022, which includes sending hundreds of unsolicited, vile emails to Defendant, Defendant's family, a number of officials, local, state, and federal, and attempts to get Defendant banned from the State of Israel by enlisting the assistance of the Jewish far-right neo-fascist group Betar.

Plaintiff has called Defendant's local police department numerous times, triggering wellness checks from the Woodland Police Department when Defendant was living in Woodland, California, the Crescent City, California Police Department, when Defendant removed himself to that place to elude Plaintiff's efforts to intrude upon his life, and finally again in Davis, California. Plaintiff has emailed and continues to email the retired Chief of Police of Defendant's home town, Darrel Pytel, solely for the purpose of discomfiting and defaming Defendant.

---

1  Paragraph 2 of Plaintiff's complaint states that Defendant and Plaintiff were in an "intimate" relationship. This is not possible or plausible.

4

MOTION TO DISMISS UNDER RULE 12(B) AND 28 USC §1915(e)

On Thursday, August 15, 2024, at 4:37 a.m., lqconnor@alaska.edu Lucas Connor wrote to Davis Chief of Police Darren Pytel at Dpytel@cityofdavis.org:[2]

> Is it true that Bernie used to work for the county handling the estates of indigent people?
>
> He has shown such a visceral hatred and aggression toward the poor on the basis of their poverty that it would be worth looking over the records of his time there to account for any thefts that might have taken place.
>
> He spends all day laughing that he can't be sued because he only attacks people who are in extreme poverty. This is how he gets through the day, by amusing himself by causing material harm to poor people that they would need money to correct in civil court. If that's so amusing to him, there's a very strong chance that he was using his office to rob homeless dead people.

Plaintiff followed up one minute later with a second email:

> He lied about you too. He told everybody that he saw you smoking meth with your cousin. And there's no "no reasonable person would believe what he says" because he has built up a cult and explicitly described his process for selecting the most gullible morons he can find.
>
> If you have knowledge of a medical condition that would lead to his behavior, this needs to be followed up on as criminal negligence charges against his mother. If you do not, you still personally have grounds to sue him. Somebody needs to in order for there to be justice for serious crimes he's committed that unfortunately would cost me $1000 to handle while I'm terminally ill and on social security. He laughs to his people about how painfully this illness is going to kill me, before I'm 40, and he gets away with it because justice would cost $1000 that I do not have access to.

Nothing in this email is true.

Defendant was visited last month, October 2025, at his home by two FBI agents from the Sacramento Anti-terrorism Fusion Center. These agents had

---

2  See attachment A, *email from Lucas Connor to Davis Police Chief Darren Pytel and Defendant, et al.*

5

MOTION TO DISMISS UNDER RULE 12(B) AND 28 USC §1915(e)

received reports bearing Plaintiff's hallmark accusations and were tasked to Defendant's mother's house to investigate the threat.

In an email dated April 19, 2025 from lqconnor@alaska.edu directed to Defendant, Defendant's mother, and Defendant's sister at her Department of Justice work email, Plaintiff admits to reporting Defenant to the FBI and lists reasons that are bizarre and undecypherable by Defendant. Plaintiff also threatens to do so again:[3]

> The broken nazi child that Bernard has dragged into view and told to interact with me has posted my address a second time.
>
> This is witness intimidation. This person would not know who I am if Bernard had not posted my fucking address and told people to do shit to me.
>
> So while I did report the address posting of this little nazi remora to the FBI's cybercrime center after the first time, now that it happened a second time, I have to file something about it with the district court here and describe to the fusion center what Bernie's group is doing as a result of his threats against me.

It is Defendant's belief that Plaintiff wishes to provoke a mistaken conflict between Defendant and whatever authorities Plaintiff can visit upon Defendant's doorstep, and that Plaintiff wishes harm to befall Defendant in one of these encounters, and that this wish is the sole motivation for making these alarming but false reports.

In prosecution of this reign of terror on Defendant, Plaintiff has created, and Defendant has documented, hundreds upon hundreds of accounts on every platform Defendant maintains a presence, all for the purpose of harassing Defendant and isolating him from his fanbase.3

---

3 See Attachment B, *email from Lucas Connor to Defendant, et al.*

6

MOTION TO DISMISS UNDER RULE 12(B) AND 28 USC §1915(e)

One such individual is a Washington D.C. lawyer, a member of Defendant's discord server, and a regular commentator on Defendant's postings. Plaintiff uncovered the true identity of this woman, Allie Diercks, discerned that she had professional credentials, and filed a frivolous complaint with the Bar Association of the District of Columbia against her license.[4]

Plaintiff's complaint to that body is as follows:

"I heard Allie Diercks was coming up for reconsideration of admission soon, after her disciplinary suspension. She does not have the judgment or character to work as a lawyer.

She's joined up with a con artist named Bernie Goldsmith, an ex-attorney from Davis, California, in trying to start a church to circumvent tax and other laws. In the course of this she's joined harassment campaigns against former members. She's also shown poor legal judgment time and time again when advising him, and doesn't question obvious things out like two-party consent reporting violations. That's more or less all I have to say, her social media account is @rule12b6."

These claims are completely invented to harm the career of Mrs. Diercks, and so were frivolous and malicious.

Defendant denies, to the best of his ability to understand them, the allegations of Plaintiff's pleading, each and generally, where any sort of articulable claim is made by Plaintiff.

Ultimately, it is Defendant's desire to be left alone by Plaintiff, and for Plaintiff to completely refrain from contacting Defendant, Defendant's family, or any of Defendant's associates.

---

4 See Exhibit C, Plaintiff's complaint and letter from Investigative Attorney Lisa M., District of Columbia Court of Appeals, No. 20-BG-659, In Re: Allison C. Diercks,

MOTION TO DISMISS UNDER RULE 12(B) AND 28 USC §1915(e)

**LEGAL STANDARD**

Rule 8(a) of the Federal Rules of Civil Procedure ("FRCP") requires a pleading to contain "(a)(1) … a short and plain statement of the grounds for the court's jurisdiction" and "(a)(2) a statement of a claim showing that the pleader is entitled to relief," and "(a)(3) a demand for the relief sought."

Plaintiff's pleadings do not contain these elements, and so Defendant moves to dismiss this case pursuant to the provisions FRCP Rule 12(b). Plaintiff fails to establish this court's subject matter jurisdiction, personal jurisdiction over defendant, and also fails to state a proper demand for the relief sought.

**THIS COURT LACKS SUBJECT MATTER JURISDICTION**

Under United States jurisprudence, for a claim to be justiciable by the federal courts, it must touch on a matter of federal law. In other words, Plaintiffs coming before a federal court must, as part of their pleadings, state some grounds by which the petitioned court has subject matter jurisdiction over a matter. Otherwise, such powers not thus granted by the Constitution or federal statute are left to the states to adjudicate themselves.

If defendant moves to dismiss for lack of jurisdiction, the burden of proof is normally on Plaintiff to establish a good faith expectation of recovery of at least the minimum jurisdictional amount. *McNutt v. General Motors Acceptance Corp. of Indiana* (1936) 298 US 178, 189, 56 S. Ct. 780, 785. The Plaintiff must demonstrate this matter to a "preponderance of the evidence." *Meridian Security ins. Co v. Sadowski* (7th cir 2006) 441 f3d 536, 543.

To establish diversity jurisdiction between several parties, the damages claimed must exceed $75,000. 28 USC §1332(a); *Freeland v. Liberty Mut. Fire Ins. Co.* (6th Cir 2011)  Where the action involves an interest in property or

MOTION TO DISMISS UNDER RULE 12(B) AND 28 USC §1915(e)

injunctive relief, the value in controversy must exceed $75,000.

Courts may dismiss where the amount alleged is in "bad faith" – i.e. solely to invoke federal diversity jurisdiction. "While a federal court must of course give due credit to the good faith claims of the plaintiff, a court would be remiss in its obligations if it accepted every claim of damages at face value, no matter how trivial the underlying injury." *Diefenthal v. C.A.B.* (5th Cir. 1982) 681 F2d 1039, 1052; see also *Anthony v. Security Pac. Fin'l Services, Inc. Co.* (11th Cir. 2000) 228 F3d 1255, 1272

Any doubt as to whether jurisdiction exists is normally resolved against a finding of such jurisdiction. *Lupo v. Human Affairs Intl'l, Inc* (2nd Cir 1994. *Kantor v. Wellesley Galleries, Ltd.* 9th Cir 1983. Sheehan v. Gustafson (8th Cir 1992).

Plaintiff fails to show damages exceeding $75,000.

In Their pleadings, Plaintiff cites no grounds for the subject matter jurisdiction of this court other than through 28 USC §1332, known as diversity jurisdiction.

In their prayer for relief, Plaintiff requests restitution of $76,000. How this sum is tabulated or related to Defendant's action is not stated. How this sum relates to the actions complained of in Plaintiff's pleading is not stated. Plaintiff does not articulate any legally cognizable claim that could be used to reach this sum when calculating actual damages to Plaintiff. Furthermore, it is clear that the specific performance prayed for by Plaintiff, "a full and decent apology" cannot be of significant worth to either Defendant or Plaintiff.

Plaintiff's pleading complains of the loss of unspecified possessions in a storage unit that they stopped maintaining payments for, and which they apparently

MOTION TO DISMISS UNDER RULE 12(B) AND 28 USC §1915(e)

did not clean out. Plaintiff complains of various health maladies that were existent before the events complained of, and Plaintiff also complains of unspecified emotional distress caused by the actions of Defendant, by means of encouraging his followers to harass Plaintiff in some way that is not specified.

All of Defendant's actions against Plaintiff could not possibly reach the pleaded amount. While it is clear that Plaintiff has suffered greatly, Plaintiff simply does not satisfy their burden of demonstrating to a "preponderance of the evidence" that the Defendant's action caused the injuries.

## Plaintiff's communications show bad faith and conflicting calculations.

Plaintiff's own computation of their damages, sent to Defendant in an email, dated September 29, 2024, includes a conflicting tabulation of damages, and a demand for Defendant to create specific, custom jewelry for Plaintiff:

On Sun, Sep 29, 2024 at 8:01 AM Lucas Connor <lqconnor@alaska.edu> wrote:[5]

So since you've given me this extra year to file, and since I'm already ready, I've just been working out travel expenses tonight, and it looks like I can get there. It's going to cost me a minimum of about $1,800 depending on how I do it, but the initial outlay is going to be much lower because I'll finance it with a cosigner that I've talked to. So that means instead of needing $600 in hand to get there on a plane, for example, I'll be able to pay $70 a month or something. And it'll be an additional $600 or so to rent a car in Eureka, but I can save up that much total, and work financing for that out with somebody's help too. So this time I'll be able to make it.

We can avoid this lawsuit if:
A) You post a public apology. A serious one in your own words. Keep it pinned for two weeks and correct anybody who endorses one of the lies you're recanting, including the idea that you even have a stalker.

---

5  See Exhibit D, *email from Plaintiff to Defendant, et al.*

10

MOTION TO DISMISS UNDER RULE 12(B) AND 28 USC §1915(e)

B) If I sue you I'm going to ask for $5000 plus travel expenses. As I said a minute ago, that could run as low as $1,800 if I fly there, get a low priced ticket which I'm seeing at ~$600 each way, rent a car to stay in instead of getting a hotel, and if the whole thing only takes around two weeks.

$5000 isn't a lot for this. You've cost me a lot of time and stress. You have to pay something. It has to cost you. I'm going to make some calls on Monday to the SSA about what I can accept - if we go to court for the full amount I'll make arrangements for it. But provisionally, what I'd be happy with is a couple of your psychology books, that blue Tiffany ring in a size 7, and about $250 of the good Sephora. I mean the seaweed Bumble & Bumble shampoo and conditioner, the Youth To The People body wash and face wash, the serum with the plankton OR the one with the cactus. Calling me fucking smelly. Get yourself something too.

And I want you to pass the hat around for Fairbanks's soup kitchen: https://breadlineak.org/donate/

That's all, and if you can meet these conditions and stop lying we're home free. I'll even ignore your war disinformation going forward, clean break. Do these things by Halloween. I will accept a different ring for a different price, but check first, I want 925 silver and a nice big smooth sky blue topaz. Don't look too hard, I already did, they don't make them like that!

This was before Plaintiff's later email to Defendant informing him that they had learned of the procedural requirements of this action to hale Defendant into federal court.

Plaintiff provides other formulations of their proposed amount in this March 26, 2025 email to Defendant, Defendant's sister, at her work address at the California Department of Justice, and to Defendant's mother:

On March 26, 2025, lqconnor@alaska.edu wrote:[6]

I hope Bernie told them something good at the police station. Pytel blocked me a couple of weeks ago and he needed an update.

I just found out I'm allowed to propose a settlement directly. I also clarified

---

6  See Attachment E, *email from Plaintiff to Defendant, et al.*

11

MOTION TO DISMISS UNDER RULE 12(B) AND 28 USC §1915(e)

with the SSA that I'm allowed to receive payment myself, although I'm still giving most of it to my parents.

I'll settle for

A) $50,000, to me.

B) A public apology and correction including accurate details given to people who have questions. Including in the discord, where most of your most active participants are.

C) Don't talk shit about me again or I will begin again.


These emails were proffered to Defendant as offers of settlement in preparation for this immediate action, but by Defendant they were interpreted as and clearly are felonious demands of extortion.

Plaintiff also articulates alternate reasonings behind their frivilous calculation of damages in a flurry of emails to Defendant, Defendant's mother, and Defendant's sister, at her Department of Justice email account, on March 21, 2025, combined here from a chain of emails, subject: "Re: The CP He Hosts On Discord" from lqconnor@alaska.edu:[7]


8:49 a.m.
Good morning, I'm calling the Sacramento fusion center today to get everybody on the same page about what Bernard has been doing. It's a good thing I already warned you, because he's been screening members by phone again.

I'm also going to make sure they're aware of his resident child porn creator. She pretends to have multiple personalities and gets incredibly emotional when people say that illegal child sexual abuse materials are wrong to create.

She doesn't seem willing to be honest with her doctors about how she spends her time, so if she does have a real medical condition causing that behavior, it hasn't improved at all. She needs to be either treated like somebody who

---

7  See Attachment F, *emails from Plaintiff to Defendant, et al.*

12

MOTION TO DISMISS UNDER RULE 12(B) AND 28 USC §1915(e)

knows that CSAM is wrong or like somebody who cannot tell what is or isn't wrong in any capacity - pretending she's "quirky" leaves somebody free to vociferously encourage pedophiles to attack the little kids in their lives, and none of us are going to allow that.

8:51 a.m.
This shit has been going on in front of me for a long time. This girl is nearly 28 years old at this point and is still doing all the exact same shit. She is unequivocally a predator as much as somebody who seeks out her content.

9:05 a.m.
For context again, this is the person who was digitally altering their photos that already look like this to appear younger:

So as you can see, this is an urgent matter of safety for everybody aged "Newborn" to 12.

P9:07 a.m.
Oh shit, that's the wrong one lol. But that one does show you how she was presenting on Twitter when he decided that was a person he should try and fuck. You can see that at no point did he think that she was worth talking to or that she looked like somebody a 40 year old should approach.

But this is the picture I was trying to post:

9:20 a.m.
If you have children in your family, dragging feet on this does not make sense. And if you're around him in real life, there's no way he's not sniffing around kindergartens and shit, like there's no way that this doesn't come up as a daily behavioral problem. In order to even think about it, he would have to be a straight up clinical pedophile, and in order to act on it in the slightest, he must have the impulse control of a dog. So are there measures that you're all taking to keep your family safe, and it only looks to me like you're not acting?

10:00 a.m.
It's so horrifying to even know about this fucking person, let alone to see Bernard basically use her to express that he had intended to rape and murder any children we would have had together.

Therapy bills are used in the calculation of damages. And obviously it would be pointless to seek relief for my emotions about this until the crime has been resolved, right? Because I'm reacting to an ongoing event that

13

MOTION TO DISMISS UNDER RULE 12(B) AND 28 USC §1915(e)

Bernard decides to maintain every day that he wakes up.

But there are going to be some high fucking therapy bills after I resolve the situation and bring justice about so that any of us can worry about any of our emotions. We're only dealing with the facts until the facts are dealt with, but after that there will be doctor bills for years. I'll make that clearer to the judge in my update later.

10:05 a.m.
Here's one REALLY EASY way to tell if we're ready to move on to healing, from where we are now.

Answer the question DID I SEND BERNIE ANY BLOOD IN ANY WAY? Answer the question DID I SEND BERNIE BLOOD THROUGH THE US POSTAL SERVICE?

Right now the official answer from Bernard and his co-defendant is that I did. They're basing this on "He wanted to say it because he wanted me to be hurt by 50,000 strangers". So emotion isn't part of this yet and it's not going to be until every single relevant fact is public and verified by a court.

10:07 a.m.
And I do not care which court it is. I deserve compensation 100%, but if he just goes to jail, that's still accountability as far as I'm concerned. That would still give me peace. That would be justice. Justice is the only thing that matters.

10:28 a.m.
He just posted "Abraham slew Issac". He's writing little jackoff stories for himself. That's the porn he likes, when little kids get murdered. It wouldn't have any other significance to him, because the murder of children doesn't have any other significance to him, so no other part of the story would have a way to make any sense to him.

Finally, Plaintiff admits themselves in an email, that this immediate action "isn't about money." Defendant concurs. This civil action has no other purpose than to finally make Defendant do the things Plaintiff wants, whatever that might be.

This email, dated February 12, 2025, with the subject "Re: This is a meet-

MOTION TO DISMISS UNDER RULE 12(B) AND 28 USC §1915(e)

and-confer," addressed to Defendant and his mother:[8]

> You also need to GENUINELY understand that this isn't about money. You might think it is and that may be contributing to a strategy of "support the criminal actions and hope that the objections to it go away on their own".
>
> This is a man who attacked me for two years straight after tricking me into a relationship for two years and getting me to agree to have kids with him. He attacked me because I objected to him getting involved sexually with somebody who is an extremely developmentally disabled simulated child pornographer. He attacked me viciously, used a mob to do it, and kept laughing about it for two years.
>
> When a man attacks somebody like that, to protect his attraction to children, attacks somebody who did everything to help them and who they said they loved, attacks somebody that they were planning to start a family with, that's evil. That's not something that somebody forgets about because they get bored. That's the blackest evil that anybody can have inside them, to trick somebody into agreeing to start a family if you're attracted to little kids like that, and then to use defamation and mob violence against them in addition to that.
>
> And he's acting like he doesn't even think he did something wrong. Your job, Janet, is to react like a human being, because he does not have the internal resources to do that. You can resolve this without a judge by having a real conversation with him about what he did. Once he understands that you can't lie about somebody to incite violence, we can start bringing this to a productive close. But he's being underserved and abused by not having that understanding brought to him and installed in him, you get it? You have to teach him something moral here so this can end.

The assertions in this email are utter fantasies of Plaintiff. Defendant never had any kind of relationship with Plaintiff where they would be planning children, nor did Defendant do any of the things described.

These emails are but a few among thousands that are of a similar drift.

---

8  See Attachment G, email from Plaintiff to Defendant, et al.

15

MOTION TO DISMISS UNDER RULE 12(B) AND 28 USC §1915(e)

Defendant can produce as many as the court might desire. They are functionally endless. They demonstrate a confusion, whether intentional or not, with legal realities, and the abuse of legal process to avenge what seems to be petty jealousy triggered by a personal delusion.

### Plaintiff's pleading attempts to aggregate claims against unnamed tortfeasors.

Further, Plaintiff cannot combine damage amounts among the purported tortfeasors to reach the requisite amount. Diversity jurisdiction allows several causes of action to be combined to exceed $75,000, but these individuals must be named Defendants in Plaintiff's action. They, as described by Plaintiff, are the ones carrying out the purported commands to harrass Plaintiff and ultimately cause damage to Plaintiff's stored possessions.[9] They, described by plaintiff, are the actual agents who are engaged in the acts and communication of a campaign of harassment against Plaintiff.

These additional co-defendants, the actual tortfeasors responsible for the alleged property damage and emotional distress, must be added for Plaintiff to be able to aggregate the results of their actions into the prayed restitution. Thus, Plaintiff's pleadings fail to meet the burdens required for diversity jurisdiction.

### Plaintiff's demand for "corrections" and an "apology" is both worthless and impossible for Defendant to perform.

The specific performance prayed for by Plaintiff is frivolous and so its value to Plaintiff or Defendant cannot be considered when calculating the total.

Plaintiff's complaint prays for relief in the form of a written apology, to be posted, pinned, on all of Defendant's social media platforms. Defendant was

_____

9  See: *Plaintiff's complaint,* paragraph 11

16

MOTION TO DISMISS UNDER RULE 12(B) AND 28 USC §1915(e)

unable to discern the precise grounds for this apology, and asked Plaintiff to provide an appropriate apology for him to post on his accounts. Plaintiff provided the text of the requested "correction" and apology for Defendant to post. However, within days, Plaintiff publicly declared that this apology, which Plaintiff themselves provided, was insufficient.

When Defendant, as above, attempts to comply with Plaintiff's requirements by posting an apology which accords with Plaintiff's explicit wording of it, the result is unsatisfactory to Plaintiff. The demand for several years that Defendant "issue a correction" and make an apology to Plaintiff's satisfaction is illusory, a literal impossibility.

Many different versions of this prayed for "correction" have been circulated online as well as directly to Defendant and Defendant's mother. They, collectively, describe an inconsistent and shifting mileu of facts and greviances demonstrating a completely arbitrary process behind the computation of their complained damages.

For example, in a letter dated March 14, 2025, Plaintiff demands a "correction" in the following form from Defendant:

On March 14, 2025, at 5:21 pm, Lucas Connor lqconnor@alaska.edu wrote:[10]

Bernie is whining about his fake infection again.

This has been going on for two years.  He is poisoning himself.  And it's not even a real delusion, he knows how antibiotics work and he already apologized to Judge Rosenberg.

He needs to be put inpatient until he understands externally, with his behavior, that his leg isn't infected, if only to regulate what pills he's able to take.

If you want me out of your hair: get approval from the judge to settle, pay

---

10 See Attachment H, *emails from Plaintiff to Defendant, et al.*

MOTION TO DISMISS UNDER RULE 12(B) AND 28 USC §1915(e)

my university ($1119), send my dad $50k, give me copies of Bernard's cult interviews, a public correction, and a public apology. The apology and the correction can be the same statement. Given the extremity, cruelty, and duration of Bernie's 100% voluntary bullshit actions, you can see that being willing to take 50k is a gift to you. If I have to deal with his fucking nonsense for any more of my life I will seek double that since it's been six months since filing.

A mere four minutes later, Plaintiff sends additional terms to Defendant and his mother:

On March 14, 2025, at 5:26 pm Lucas Connor lqconnor@alaska.edu wrote:

Even calling his actions "voluntary" would be generous since they're not just voluntary, they're premeditated. Every impulsive action he has taken he has reversed. His actions against me are a premeditated hate crime, as demonstrated by

A) His apologies to every single other person on Earth.
B) His attraction to minors, which demonstrates that his feigned attraction to me had some other motive.
C) Possible payments and online radicalization from members of a forum, which may have socially incentivized him to seek out targets for hate crimes.

Here, Plaintiff discusses arbitrarily doubling the amount, then below the $75,000 threshold, and provides another reformulation of the apology prayed for in this proceeding. Under this formulation, Plaintiff's success in this action would require this court to order Defendant to make public admission of Pedophilia, directed to every person on planet Earth.

Thousands of communications have been made by Plaintiff to Defendant, unsolicited, un-read, and un-responded to. These contain demands, allegations, articulations of wrongs by Defendant against Plaintiff that shift according to Plaintiff's changing moods. No apology can ever be authored that could contain this conflicting multitude of grievances. The relief Plaintiff pleads for is legally

MOTION TO DISMISS UNDER RULE 12(B) AND 28 USC §1915(e)

and literally impossible for Defendant to ever provide.

## THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT

"In personam jurisdiction is necessary whenever a judgment is sought that would impose an obligation on defendant personally: e.g., a judgment to act or refrain from acting in some manner." *Pennoyer v. Neff*, 95 U.S. (1878). However, Constitutional due process requires an adequate basis for jurisdiction over the party sought to be bound by the court's judgment or decree.5

Plaintiffs have the burden of establishing the facts in their pleading that would give rise to personal jurisdiction. See: *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

Plaintiff brings this action in their home state, Massachusetts, alleging that Defendant's conduct, posting certain unspecified things Plaintiff considers personally libelous online, satisfies the requirements of due process under the 14th amendment, and in so doing Defendant should have a reasonable expectation of being haled into a Massachusetts court to defend himself.

To determine whether a court is authorized to exercise personal jurisdiction over a defendant, the court examines whether the exercise of jurisdiction comports with the limits of the 14th amendment due process clause. *Walden. v. Fiore*, 571 U.S. 277 (2014).

Pleadings do not assert any traditional bases of jurisdiction.

The three traditional bases for exercise of personal jurisdiction are recognized as: physical presence, domicile, or consent.

Defendant asserts that none of the traditional bases for personal jurisdiction are asserted by Plaintiff or operative here; he has no presence, actual or legal, in

MOTION TO DISMISS UNDER RULE 12(B) AND 28 USC §1915(e)

the state of Massachusetts. Defendant also points out that Plaintiff has not asserted any consent on the part of Defendant to be haled into the courts of this jurisdiction.

Absent one of the traditional bases of availment, due process requires that the defendant have "certain minimum contacts within the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. 310.

<u>Pleadings fail to establish any "minimum contacts" basis for personal jurisdiction.</u>

Even assuming as correct Plaintiff's contention that Defendant spread libelous material over the internet, and assuming that Plaintiff had identified a single such statement authored by Defendant within their pleading, Defendant's purported activity within the jurisdiction of Massachusetts does not give rise to the minimum contacts required under the International Shoe standard... "Something more than posting and accessibility is needed to indicate that the defendant purposefully, albeit electronically, directed their activity in a substantial way to the forum state." *Young v. New Haven Advocate*, 4th Cir 2002.[11] See also: *Johnson v. Arden*, No. 09-2601 (8th cir 2018) defamatory statements regarding Missouri residents posted on internet gripe site not sufficient for personal jurisdiction in Missouri absent showings postings were made for purpose of having their consequences felt in Missouri.

For this reason, Plaintiff has failed to establish personal jurisdiction and this case must be dismissed under FRCP (12)(b)(2).

---

11 See also: *Johnson v. Arden* No. 09-2601 (8th cir 2018), defamatory
  statements regarding Missouri residents posted on internet gripe site not
  sufficient for personal jurisdiction in Missouri absent showings postings
  were made for purpose of having their consequences felt in Missouri.

20

MOTION TO DISMISS UNDER RULE 12(B) AND 28 USC §1915(e)

**THIS ACTION HAS BEEN BROUGHT IN AN IMPROPER VENUE**

Defendant moves to dismiss this action for failure to establish Massachusetts as a proper venue for this action under FRCP 12(b)(3).

U.S. Code §1391 states that,

> "A civil action may be brought in—
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."

Plaintiff's complaint fails to assert any basis for establishing venue in the courts of Massachusetts. Defendant himself resides in the Eastern District of California, where, absent any assertions to the contrary, the conduct complained of in Plaintiff's complaint would have also transpired.

**PLAINTIFFS FAIL TO STATE A LEGALLY COGNIZABLE CLAIM**

Rule 12(b)(6) provides for the dismissal of an action for "failure to state a claim upon which relief can be granted." See FED. R. CIV. P. 12(b)(6). For a 12(b)(6) motion, "all well-pleaded allegations of material fact [are accepted as true] and construe[d] in the light most favorable to the non-moving party." *Padilla v. Yoo*, 678 F.3d 748, 757 (9th Cir. 2012). "[C]onclusory allegations of law and unwarranted inferences" are insufficient. Associated Gen'l *Contractors v. Metro. Water Dist.*, 159 F.3d 1178, 1181 (9th Cir. 1998). A complaint must state

MOTION TO DISMISS UNDER RULE 12(B) AND 28 USC §1915(e)

"evidentiary facts which, if true, will prove [the claim]," *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008), otherwise it will be dismissed. See *Watson v. Weeks*, 436 F.3d 1152, 1157 (9th Cir. 2006).

Plaintiff holds Defendant responsible for $75,000 in damages, but Plaintiff's pleading does not identify any legally cognizable harm that is directly or proximately caused by any action of Defendant.

Plaintiff describes the loss of their storage unit in 2023, but fails to relate how Defendant's actions, as Plaintiff describe them, has any causal relationship to this event.

Plaintiff complains that defendant was "encouraging threats" against Plaintiff by his followers, but fails to exemplar this assertion in any way that can make clear what conduct or speech by Defendant is complained of.

Plaintiff fails to identify any libelous speech of Defendant, or even in general terms any type of speech by Defendant that could result in the emotional distress and loss of property Plaintiff complains of.

Plaintiff's pleading describes a complicated conspiracy consisting of tens of thousands of participants, directed by Defendant, to cause Plaintiff distress and to somehow damage property belonging to Plaintiff in their storage unit, ultimately causing its destruction. Plaintiff does not assert any relationship between these events for which Defendant could possibly be held legally liable. Defendant is, in fact, at a loss to craft any defense at all to these events, can identify no act or omission on his part to analyze and to account for from these pleadings, and cannot discern to dispute any connection to legally cognizable damage Plaintiff complains of suffering.

Plaintiff has antagonized the online public enough to have through their own actions engendered and organized the very online harassment complained of in

MOTION TO DISMISS UNDER RULE 12(B) AND 28 USC §1915(e)

their pleading. These are not wrongs that are legally cognizable as tortious actions by Defendant against Plaintiff, and Plaintiff fails in their pleading to clarify any causal link between Defendant's actions or omissions and the complained of harms.

## PLAINTIFF'S PRO-PAUPERIS PLEADING IS FRIVILOUS AND MALICIOUS

Plaintiff brings this case forward without costs, asserting their status as pro pauperis. However, in the case of such pleadings, 28 USC 1915(E) provides that:

> "(E)(1) The Court shall dismiss the case at any time if the court determines that it is – (B)(I) frivolous or malicious, or (B)(ii) fails to state a claim on which relief may be granted."

A court, when reviewing a pleading under this standard, has the "unusual power to pierce the veil of the complaint's factual allegations" to dismiss claims that are "clearly baseless." *Gonzalez v. Guadalupe County Correctional Facility, et al*, No. 1:2018cv00065 - Document 36 (D.N.M. 2020).

A judge may review the full record before them in order to understand the true procedural context of Plaintiff's complaint. These materials include the Plaintiff's prior history of filing frivolous or malicious complaints, the entire docket of the present case, or anything else of which the court chooses to take judicial notice. *Gonzalez, Id.*

This case, by the preponderance of the evidence, is brought frivolously and maliciously.

Here, Defendant has quoted in full a previous complaint by Plaintiff against

23

MOTION TO DISMISS UNDER RULE 12(B) AND 28 USC §1915(e)

an attorney in Washington DC, a person who Defendant has never met. These allegations accuse that attorney of professional misconduct before the District of Columbia Bar Association Attorney Disciplinary Board because of her purported association with Defendant, who Plaintiff identifies therein as a "cult leader" who is engaged in tax evasion schemes. These are falsehoods.

Defendant has presented in this motion mere excerpts of Plaintiff's other adventures, where they filed malicious and frivilous complaints against Defendant with his local police departments, a special FBI task force, and even the administrative staff of Del Norte and Yolo counties in California.

In addition to swearing under penalty of perjury to the truth of the assertions made by this Defendant in this motion pro se, Defendant also includes in this motion quoted selections from and reference to various other documents that Plaintiff has authored. These writings and admissions are all fair game for the court's determination.[12]

Plaintiff's pleading contains a number of fantastical assertions about Defendant that indicate an inability to discern fiction from truth, and parody from reality.

Plaintiff repeats an assertion in paragraph 8 of their pleading that Defendant is a pedophile, or the nature of his "disagreement" with Plaintiff concerns Defendant's proclivity for "somebody who was too young." Plaintiff has spent the better part of five years creating hundreds of sham accounts on every platform Defendant maintains a presence, and uses them to harass Defendant and anyone who interacts with Defendant morning, noon, and night, to accuse Defendant of pedophilia.

---

12 "The facts contained in sworn affidavits may be reviewed by the court and compared to the assertions in Plaintiff's pleading." *Hernandez*.

MOTION TO DISMISS UNDER RULE 12(B) AND 28 USC §1915(e)

As proof of Defendant's pedophilia, Plaintiff repeatedly posts a photo of another woman Plaintiff contends Defendant is intimately involved with. The woman in the photo, who will not be named, was 26 years of age at the time of the taking of the photo, modestly dressed with a long skirt and long sleeved blouse, and very clearly is well of-age. These claims, made to anyone who hasn't yet blocked Plaintiff, make no sense at all, except as a means of maliciously harassing and isolating Defendant.

On March 23, at 1:13 a.m., Plaintiff wrote to Defendant, Defendant's mother, and Defendant's sister, at her Department of Justice email account:[13]

> When Bernie says that we weren't involved, what he's describing is that he never GENUINELY liked me. Outwardly, he was the one pursuing me and we were planning to move in together.
>
> He pretended to be interested in me sexually for two years in order to effect a hate crime that he had planned, which eventually took the form of lying about me to a mob in the hopes that one of them would take physical action against me.
>
> There is ample proof that he lied from the beginning.
>
> Here, in the screenshot, you can see him saying "Your gender expression is exactly my thing." In fact, his thing is five year olds and the color Baker-Miller Drunk Tank Pink (it makes him feel calm and at home).
>
> I was never using Baker-Miller Drunk Tank Pink in any context. I didn't overlay it on my selfies or send him big blocks of the color to stare at. I never dressed up as Strawberry Shortcake and shit my pants in front of him. That's important context because otherwise, if you didn't know him at all, what he's saying might sound realistic.
>
> In fact, he took this ruse further and said things like "You're creating this pristine display. I must respect it. But it's just begging to be defiled." I have kind of a severe look and demeanor. I'm kind of serious. He's called me things like "Scary smart" and a "Nuclear Reactor". These are all traits that

---

13 See Attachment I, *email from Plaintiff to Defendant, et al.*

MOTION TO DISMISS UNDER RULE 12(B) AND 28 USC §1915(e)

disgust him - if he isn't looking at pink ruffles on a Cabbage Patch Doll, he can't even really stop vomiting long enough to see the person he's talking to.

Nobody is attracted to toddler baby bullshit and also a second thing, it would be physically impossible and he's made himself clearer than anybody in fucking history.

Plaintiff has made claims that Defendant is in league with the KGB, and, for months, Plaintiff sent inscrutable documents and screenshots of domain name records to anyone who engaged with Defendant online, documents that Plaintiff purports contain information that would expose this conspiracy.

On May 21, 2025, lqconnor@alaska.edu Lucas Connor wrote, to Bernie Goldsmith and his sister, Allison Goldsmith, at her California Department of Justice email address:[14]

"Bernie, do you remember when Allison "Enza" Crandall said that she used to date an enemy of yours?

Do you remember her second username she came back with?  The first was "Enzathereal", the second was "ACXEnza".

Do you know anybody at Astral Codex Ten?  If you know of, for example, Russian Mob people doing ops like hiring motherfuckers to post foreign disinformation, you should communicate that to the authorities immediately. Anything you know about her connection to that group, or hell, anything else that would bring that whole situation to justice needs to be brought out of your mouth fast."

There is absolutely nothing that makes sense to Defendant in this communication.

Plaintiff also reports that they have given Defendant's information to Betar, a right-wing Jewish nationalist youth movement, in a bid to have Defendant legally

---

[14] See Attachment J, *email from Plaintiff to Defendant, et al.*

MOTION TO DISMISS UNDER RULE 12(B) AND 28 USC §1915(e)

barred from the country of Israel. On Sunday, April 20, 2025,

lqconnor@alaska.edu, Lucas Connor, wrote a flurry of emails to Defendant,

Defendant's mother, and Defendant's sister at her Department of Justice work

email, Subject: rotting meat:[15]

> You know what, I'm going to talk to Betar[16] too. I wasn't going to, but his people have been set on "Try and have this person killed" and he has not shut them off yet. They did this shit to me again so I'm going to talk to Betar and see if they're willing to ban him from Israel. I know he's talked shit about it, but before that, he expressed that having Israel available was equivalent to being rescued from a deadly shipwreck.
>
> I don't know what has meaning to him. I have only seen evidence that nothing moves him or can, that he has no conscience or emotions other than thinking all suffering in any form is a funny joke. That's the only thing I have seen from him. But I think later, if he's banned from Israel, it might present a practical problem, and maybe that would be something like justice or a consequence. I'm sure that he wouldn't connect it to anything he's done, or reconsider his stance that "all suffering and violence is funny and the only reaction to have is giggling and causing more". But a consequence would at least show that when you lie in order to incite lynch mobs, something happens to you and not to your target. Which is an immutable fact that cannot ever be violated, because people ALWAYS DEFEND THEIR LIVES.

Some of the Plaintiff's understanding of the law and their reasoning behind this current lawsuit can be seen in the numerous emails sent unsolicited to Defendant and others. In an email to Defendant and Defendant's mother, dated March 6, 2025, Plaintiff exhibited their apparent discovery that, by becoming a plaintiff against a defendant, the defendant "would then be cowed into doing any

---

15 See Attachment K, *email from Plaintiff to Defendant, et al.*

16 Betar is a neo-fascist right-wing Jewish nationalist militia and direct action group.

MOTION TO DISMISS UNDER RULE 12(B) AND 28 USC §1915(e)

favors asked by the plaintiff" (emphasis added):[17]

> Janet, your son is telling people that we never dated and that I've "stalked him for four years". He understands that is false and he's been doing it for a while so I'm going to add that in to the lawsuit. He's unrepentant and will not stop lying.

> We were about six weeks from moving in together when he flipped shit and started that discord to pick up pseudominors in (Not that he checked ID!).

> Slight change of subject: I was looking for the posts in 2022 where he explains what actually happened to his hip. Those are deleted, but instead I found posts about his lawsuit with Ishar. He describes being defamed! He describes seeing that as immoral. He describes making all their private communications public as a punishment. So he not only sees what he's doing as a vicious betrayal, but worthy of a punishment so severe, as he described it, that **the subject would then be cowed into doing any favors asked by the plaintiff.**

Plaintiff's complaint is frivolous on its face. Defendant cannot practically manage a network of 20,000 malicious agents against Plaintiff over a period of four years. These agents, whether they be self-declared employees of Defendant, his cult members, or other things Plaintiff has alleged of Defendant in their writings, are simply incapable through the means described by Plaintiff of destroying or causing the destruction of the possessions in Plaintiff's storage shed, as they complain.

These agents are supposed to have been doing Defendant's bidding over this period, uncompensated, as a sort of volunteer army of harassment directed exclusively at Plaintiff, activities that have gone undetected by any of the many authorities Plaintiff has invoked against Defendant.

These claims, of an invisible conspiracy, of personal persecution, while

---

17 See Attachment L, email from Plaintiff to Defendant, et al.

MOTION TO DISMISS UNDER RULE 12(B) AND 28 USC §1915(e)

potentially subjectively true to Plaintiff, cannot be true under any reasoning that would not be immediately recognized on its face as fantastical or the product of very clear, classic mental delusions.

It is unlikely, if not impossible, for Plaintiff's claims to be true. In fact, Plaintiff's claims are discordant with reality that they instead tend to demonstrate by their content that any legal cause of action they might describe is secondary to their true purpose, which is to maliciously scandalize Defendant through the abuse of legal process.

And Plaintiff has abused legal process. In the four corners of this motion alone we find Plaintiff abusing the process of the federal courts of Massachusetts, the processes of the law in Davis, Woodland, and Crescent City, wasting the time of an FBI Anti-terrorism task force, giving false complaints to the District of Columbia Bar Association, and even attempting to have Defendant legally barred from ever entering the nation of Israel, all of which required or will forseeably require the effort of professionals who have much more important things to do with their time and resources.

On March 26, 2024, Plaintiff attempted to hire Defendant's mother via email to represent them in this action against her own son, the Defendant. On March 26, 2024, Lucas Connor lqconnor@ualaska.edu wrote:[18]

> Mrs. Goldsmith, since you're a lawyer, maybe I can hire you pro bono, then when I win, he can just pay you the legal fees. That way nobody's out anything and this gets resolved by the best. Or would there be a conflict of interest since you're a material witness? Maybe that would make it easier to settle out of court, ie, to get a settlement of a full correction (basically everything covered by his tik tok video which I sent you earlier, that can be considered a comprehensive list). What do you think?

---

18 See Attachment L, *email from Plaintiff to Defendant, et al.*

MOTION TO DISMISS UNDER RULE 12(B) AND 28 USC §1915(e)

Defendant contends that Plaintiff, through this and other unsolicited communications, demonstrates a lack of basic awareness or understanding of the legal processes they invoke, except as an instrument to harm and harass their chosen victims.

Plaintiff's description of events as they have unfolded over these last five years are experiences that are exclusive to and only accessible to Plaintiff. They cumulatively demonstrate an inability on Plaintiff's part to distinguish between comedy, parody, scripted skits, and the very hard truths of reality and objective fact.

This inability is at the root of Plaintiff's problems, and has more to do with Plaintiff's mental capacity than any action or omission by Defendant. Plaintiff's difficulties are, regrettably, beyond Defendant's ability to either cause or fix. Plaintiff's difficulties are, regrettably, beyond this court's ability to reach and remedy.

Plaintiff's pleadings, when reviewed in full context, demonstrate very clearly that this immediate action before the court is only the latest in a series of harassing acts and abuses of process that have targeted Defendant for years, and are only escalating in grandeur and scale. Plaintiff, if not stopped, will continue, and escalate, until they are stopped by some official action of the courts.

Plaintiff's immediate action is clearly frivolous and malicious under the meaning of 28 USC §1915(E), and so the court is obliged by this provision to immediately dismiss this case.

MOTION TO DISMISS UNDER RULE 12(B) AND 28 USC §1915(e)

**CONCLUSION**

For the above reasons, this Court should grant Defendants' Motion to Dismiss.

DATED this 17th day of NOVEMBER, 2025

AFFIDAVIT

I, Bernard Robert Goldsmith, Defendant in this action and author of this motion pro se, declare under penalty of perjury that the facts put forth above are true and correct.

/s/ Bernard Robert Goldsmith          Date: NOVEMBER 17, 2025

CERTIFICATE OF SERVICE

I certify that this pleading was delivered to the Plaintiff on November 17, 2025.

Signature: _____

By: __BERNARD ROBERT GOLDSMITH__

31

MOTION TO DISMISS UNDER RULE 12(B) AND 28 USC §1915(e)